**Reginald D. TURNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47550.**

Court of Criminal Appeals of Texas.

Feb. 20, 1974.

William B. Portis, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, James C. Larkin, Jr., Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for murder with malice aforethought wherein the punishment was assessed at ten (10) years, the trial being before the court.

Initially appellant contends the evidence is insufficient to sustain a conviction for murder with malice aforethought.

The record reflects that the appellant and Loretta Haywood, the deceased's wife, were involved in a minor automobile collision with each other on February 16, 1972 or "late February." After waiting for the police a while, Mrs. Haywood agreed to pay the damages and the appellant agreed he would take the matter up with the deceased, whom he knew.

It appears that the appellant came to the Haywood home on two occasions concerning the matter. On one occasion the deceased was not home, and on the other oc-

casion the appellant and the deceased left and spent some time in order to have the damage to appellant's car appraised.

On Sunday, March 12, 1972, appellant was across the street from the deceased Haywood's house in Houston talking to another individual when the deceased asked him to come to the Haywood house to discuss the accident. Appellant went to his automobile and obtained a .38 caliber pistol and went into the house. A discussion with the deceased, his wife and half brother, Robert Allen, ensued. It appears that the amount of damages agreed upon was seventy dollars ($70), but the deceased was unable to pay all of it. It appears the deceased offered ten dollars ($10) and to call his employer to seek more money. The discussion continued and the appellant and the deceased walked into the yard where the deceased leaned or sat on the back of a car.

Allen also left the house and was sitting in the car of J. B. Lynch, the deceased's brother-in-law.

Allen, Lynch and the deceased's wife, who was on the porch, testified that, while it did not appear the two men were arguing, the appellant fired one shot in the air and then shot at the deceased three times.

Allen rushed towards the house and obtained a shotgun from the deceased's wife and advanced on the appellant. The shotgun would not fire and Allen began beating the appellant, who dropped the pistol and left the scene.

The deceased died on April 2, 1972.

Testifying in his own behalf, appellant detailed his efforts to collect the damages involved and related he had loaned his pistol to his sister and that he got it from her on Friday before the shooting on Sunday and had left it in his car. He testified that he got it out of the car before he went into the Haywood house on Sunday because there were a number of persons near his car and he didn't want to leave

the pistol there, but denied he obtained it for any other reason.

He related that as he and the deceased left the house and were discussing the accident he told the deceased that he had had nothing but promises from him and his wife and that "their words didn't amount to a hill of beans," and that when he said this the deceased advanced on him, making a movement towards his pants pocket, and that he shot in self-defense.

■ With regard to appellant's contention, it is well established that malice can be inferred from the use of a deadly weapon. Tsamouris v. State, 472 S.W.2d 141 (Tex.Cr.App.1971); Grant v. State, 449 S.W.2d 480 (Tex.Cr.App.1969); 4 Branch's Ann.P.C., 2d ed., Sec. 2189, p. 534. And in Taylor v. State, 470 S.W.2d 693 (Tex.Cr.App.1971), this court held that a pistol is a deadly weapon per se and the fact that the defendant shot the deceased at close range with a pistol authorized the finding of malice in the prosecution for murder.

The trial was before the court, who was the exclusive judge of the facts proven, the credibility of the witnesses and the weight to be given to their testimony.

■ The evidence is clearly sufficient to sustain the trial court's judgment and finding as to malice.

■ Next, appellant contends that the State failed to meet its burden of proof by proving beyond a reasonable doubt the cause of death. It is his contention that the deceased died from pneumonia which came from possible negligence, which may have resulted when he was moved from one hospital to another hospital.

It was shown that on March 12, the date of the shooting, the appellant was taken to the Ben Taub Hospital and after surgery there due to his wounds he was moved on March 31st or April 1st to a Veterans' Hospital where he died on April 2nd.

Dr. Ethel Erickson testified she performed the autopsy on the deceased and found two gunshot wounds and recovered two large caliber bullets. She related one bullet entered the chest, broke a rib and tore up much of the right lung. The second bullet went into the abdomen and injured the gastrointestinal tract, liver, right kidney and vertebra.

She expressed the opinion that the cause of death was these gunshot wounds. She related that the deceased had contracted double pneumonia as a result of the wounds, which was a common occurrence after such injuries and traumatic surgery. And while she testified that pneumonia precipitated death, she expressed the opinion that the deceased would have died from his wounds if he had never been treated or if he had never contracted pneumonia. She indicated there was little medical likelihood the deceased would have contracted pneumonia save for the wounds.

Dr. Erickson was not aware of the circumstances under which the deceased was moved from one hospital to another, but noted it was a common occurrence. No other evidence of negligence or improper treatment was offered.

"If a wound causes a disease which produces death and there is no evidence of gross neglect or improper treatment, the death is imputable to the wound." 4 Branch's Ann.P.C., 2d ed., Sec. 2033, p. 345.

In Wilson v. State, 136 Tex.Cr.R. 590, 126 S.W.2d 977 (1939), the deceased died as a result of pneumonia that was caused by the appellant stomping on the ribs and head of the deceased. Quoting from Powell v. State, 13 Tex.App. 244 (1882), the court wrote:

"It is an ancient and well settled principle of the law of homicides, that, if a wound causes a disease which produces death, the death is imputable to the wound."

In Wright v. State, 388 S.W.2d 703, 706 (Tex.Cr.App.1965), it was held that if the act of the defendant alleged in the indictment contributed to the death of the deceased, he is responsible though there were concurring causes. See also 29 Tex.Jur.2d, Homicide, Secs. 67 and 68, pp. 69–72.

We deem the evidence sufficient to show that the gunshot wounds were the cause and factor in all of the complications and a moving and efficient cause of death. Wright v. State, supra, and cases there cited.

Reeves v. State, 131 Tex.Cr.R. 560, 101 S.W.2d 245 (1937) and Edge v. State, 144 Tex.Cr.R. 480, 164 S.W.2d 677 (1942) do not sustain appellant's contention to the contrary. In those cases there was evidence of an independent cause of death.

The judgment is affirmed.