COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 JOSE ZAMARRIPA ALVARADO,
  
                            
 Appellant,
  
 v.
  
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-10-00211-CR
  
 Appeal from the
  
 406th
 District Court
  
 of Webb
 County, Texas
  
 (TC#
 2008-CRS-000589)
  
 
 


O P I N I O N

In a bench trial, Appellant, Jose Zamarripa
Alvarado, was found guilty of indecency with a child by contact and was
sentenced to confinement for eleven years. 
On appeal, Appellant contends that trial counsel rendered ineffective
assistance and that the evidence presented in the guilt-innocence phase of
trial was legally insufficient to support his conviction.  We affirm.

BACKGROUND

            By
indictment, Appellant was charged with indecency with a child by contact.  The complainant was C.J., the eleven-year old
daughter of Appellant’s wife.

At trial, C.J. testified that Appellant, her
mother, and her two sisters slept on two mattresses in one room.  Appellant and C.J.’s mother slept on one
mattress, and C.J. and her sisters slept on the other mattress, which was
separated from the adults’ bed.  C.J’s
mother always slept closest to her daughters’ mattress, and C.J. always slept
closest to her mother.  On or about April
1, 2007, C.J. went to bed with her clothes on, including underwear, blue jeans,
and a blouse.  C.J. awoke in the night because
she saw and felt Appellant using his hand to touch her genitals underneath her
underwear.  Appellant was in the bed
where C.J.’s mother usually slept.  After
waking up to find Appellant touching her in this way, C.J. moved away from
where she was and Appellant left the room for five to ten minutes.  Appellant then returned to the adult bed and
lay down where he usually slept.

According to Yuridiana de Carmen Aranda, the
certified outcry witness from the Children’s Advocacy Center of Laredo who
interviewed C.J. and testified at trial, C.J. reported that Appellant had unbuttoned
C.J.’s pants and touched C.J.’s vagina underneath her underwear with his hand,
causing C.J. pain.

Laredo Police Investigator Carlos Villarreal
testified that he viewed the video recording of C.J.’s outcry statement and
asked Appellant to come to the police station so that he could speak with
Appellant about the allegations.  After
Villarreal advised Appellant of his constitutional rights in English and
Spanish, Appellant indicated that he understood his rights, placed his initials
next to each of the recited constitutional rights and wrote the word, “Si,” in
answer to the questions, “Do you understand your rights?” and “Do you elect to
waive [your rights] and speak with us at this time?”  Within fifteen minutes, Appellant had
completed his written statement and was provided an opportunity to review the
statement and make any changes or alterations. 
Appellant’s written and signed warnings and voluntary statement were admitted
into evidence over the objection of Arturo Gallegos, Appellant’s trial
counsel.  Appellant’s confession, which
Appellant wrote by hand in Spanish, was read into the record by Villarreal and
translated by the trial court’s interpreter:

I, Jose Alvarado, make the following statement:  That as [C.J.] accuses me of having touched
her private part, I confess that it was so, but without bad intention.  It was because of accident.  Because my lady, in other words, her mother,
was supposed to be in the place that [C.J.] was at.  And it was dark.  I could not see.  And since I’m always touching my lady, I got
there and stuck my hand in her.  But when
I heard her talk, I removed my hand from there. 
She was not supposed to be in that place.  But from there onwards, I tried that it will
never happen again, and I never stick my hand into my lady until I am sure that
it is her.

 

Although Appellant attempted to suppress the
statement in a pretrial hearing, arguing that it was involuntarily made because
he was intoxicated, did not understand his rights, and was not informed of a
right to counsel, the trial court had found that Appellant’s Miranda rights were read to him and that
he knowingly, voluntarily, and intelligently waived them, and then ruled that
Appellant’s statement was admissible in evidence.

Appellant testified both at the suppression
hearing and at trial.  At trial,
Appellant alleged that he did not understand the warnings provided to him
before making his statement, that he wrote down what he was told to write at
the police station, explained that his definition of “private parts” includes
“the breasts, in front on the bottom, and on the back,” and declared that he
only touched C.J.’s buttocks in the mistaken belief that he was touching his
wife.  Appellant testified that he
spanked C.J. as he routinely and lovingly spanks his wife, and remarked, “If
that is touching, yes, I did touch her.” 
As he had at the suppression hearing, Appellant again testified that his
statement was involuntarily made and denied any wrongdoing.

At the conclusion of the guilt-innocence
phase of the bench trial, the trial court found beyond a reasonable doubt that
Appellant was read his Miranda rights
and knowingly, voluntarily, and intelligently waived them when he consented to provide
the voluntary statement that was admitted into evidence, and after taking into
consideration all of the evidence that was presented, found Appellant guilty of
knowingly engaging in sexual contact with a child.  During the punishment phase, the trial court
noted that Appellant’s statement that he stuck his hand in but removed it when
he heard C.J. speak was inconsistent with spanking.  The trial court also declared that it took
into consideration the appearance and expression of C.J. when she testified and
likewise considered the demeanor and manner in which Appellant expressed
himself in responding to some of the questions and providing explanations
during his testimony.  Although the State
had offered Appellant plea agreements involving sentences of two years and
three years, the trial court sentenced Appellant to eleven years’ confinement
so that Appellant would “remember this act that [Appellant] committed [upon] an
innocent 11-year-old girl” and would remember how old C.J. was when Appellant
committed the offense.

DISCUSSION

I.

In Issue One, Appellant contends trial
counsel was ineffective and prejudiced his defense, thereby depriving him of a
fair trial.  Appellant specifically
complains that Mr. Gallegos rendered ineffective assistance of counsel because:
 (1) Mr. Gallegos’ statements and acts
before the trial court in relation to Appellant’s refusal to accept the State’s
plea offers undermined Appellant’s presumption of innocence; (2) Mr. Gallegos
failed to file a notice of appeal; (3) Mr. Gallegos placed his own interests
above Appellant’s right to a fair trial without prejudice; (4) Mr. Gallegos
failed to “invoke the rule” during the suppression hearing; (5) Mr. Gallegos
failed to object to “numerous leading questions” from the complaining witness;
(6) Mr. Gallegos permitted exhibits to be improperly admitted without certified
translation thereof; (7) Mr. Gallegos failed to ask for a directed verdict; and
(8) Mr. Gallegos failed to argue that the evidence against Appellant was
insufficient to support his conviction.

In judging any claim of ineffective
assistance of counsel, the benchmark must be “whether counsel’s conduct so
undermined the proper functioning of the adversarial process that the trial
cannot be relied on as having produced a just result.”  Strickland
v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  We analyze claims of ineffective assistance
of counsel under the Sixth Amendment by applying a two-prong test.  Strickland,
466 U.S. at 686; Ex parte Chandler,
182 S.W.3d 350, 353 (Tex.Crim.App. 2005). 
Under this framework, Appellant must prove by preponderance of the
evidence that his counsel’s performance was deficient and there is a reasonable
probability sufficient to undermine confidence in the result that the outcome
would have been different but for counsel’s deficient performance.  Ex
parte Chandler, 182 S.W.3d at 353, citing
Strickland, 466 U.S. at 694.

To establish deficient performance under the
first prong of Strickland, Appellant
must show that counsel was not acting as a reasonably competent attorney and
that his advice was not within the range of competence demanded of attorneys in
criminal cases.  Ex parte Chandler, 182 S.W.3d at 354, citing Strickland, 466 U.S. at 687. 
Appellant must overcome the strong presumption that counsel’s conduct
fell within the wide range of reasonable professional assistance.  Strickland,
466 U.S. at 689.  Thus, Appellant must
overcome the presumption that, under the circumstances, counsel’s challenged
conduct may be considered sound trial strategy. 
Miniel v. State, 831 S.W.2d
310, 323 (Tex.Crim.App. 1992), citing
Strickland, 466 U.S. at 689.  While
strategic choices made after thorough investigation of law and facts relevant
to plausible choices are virtually unchallengeable, counsel’s cited strategy
does not prevent a reviewing court from determining whether a specific act or
omission was outside the wide range of professionally competent
assistance.  Id.  We judge the
reasonableness of counsel’s performance according to prevailing professional
norms which includes an examination of all the facts and circumstances involved
in a particular case.  See Strickland, 466 U.S. at 688, 690.

To meet his burden under the second prong of
Strickland, Appellant must establish
that counsel’s constitutionally deficient performance prejudiced his defense;
he must show that there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different.   Ex parte Chandler, 182 S.W.3d at 354, citing Strickland, 466 U.S. at 694.  A “reasonable probability” is “a probability
sufficient to undermine confidence in the outcome.”  Strickland,
466 U.S. at 694.  Any constitutionally
deficient acts or omissions will be considered in light of the totality of the
evidence before the judge or jury when making this determination.  Strickland,
466 U.S. at 695; Ex parte Nailor, 149
S.W.3d 125, 130 (Tex.Crim.App. 2004).

The record on appeal must affirmatively
demonstrate trial counsel’s alleged ineffectiveness.  Bone v.
State, 77 S.W.3d 828, 835 (Tex.Crim.App. 2002).  As the Texas Court of Criminal Appeals has
repeatedly said, a reviewing court will rarely be able to fairly evaluate the
merits of an ineffective-assistance-of-counsel claim on direct appeal because
the record on direct appeal is usually undeveloped and inadequately reflective
of counsel’s reasons for his or her actions at trial.  Mata v.
State, 226 S.W.3d 425, 430 (Tex.Crim.App. 2007); compare Cannon v. State, 252 S.W.3d 342, 350 (Tex.Crim.App. 2008) (although
rare, trial record was sufficient to permit appellate court to decide merits of
ineffective-assistance claim).  “The lack
of a clear record usually will prevent the appellant from meeting the first
part of the Strickland test, as the
reasonableness of counsel’s choices and motivations during trial can be proven
deficient only through facts that do not normally appear in the appellate
record.”  Mata, 226 S.W.3d at 430.

After conducting a thorough review, we find
the record before us underdeveloped and silent regarding the motivations
underlying counsel’s tactical decisions.[1]  We find nothing in the record that apprises
us of counsel’s reasons for his acts or omissions at trial and about which
Appellant now complains in this direct appeal. 
Consequently, Appellant has not overcome the strong presumption that
counsel’s conduct was reasonable.  See Mallett v. State, 65 S.W.3d 59, 63
(Tex.Crim.App. 2001).  “[C]ollateral
attack may be . . . the vehicle by which a thorough and detailed examination of
alleged ineffectiveness may be developed and spread upon a record.”  Ex
parte Duffy, 607 S.W.2d 507, 513 (Tex.Crim.App. 1980).  Issue One is overruled.

II.

In Issue Two, Appellant contends the
evidence was legally insufficient to support his conviction because the State
failed to prove beyond a reasonable doubt the essential element of intent.  We disagree.

Standard of Review 

In reviewing the sufficiency of the evidence
to support a conviction, we view all of the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Brooks v. State,
323 S.W.3d 893, 895 (Tex.Crim.App. 2010); Clayton v. State, 235 S.W.3d
772, 778 (Tex.Crim.App. 2007).  Such a
standard not only gives full play to the responsibility of the trier of fact to
resolve conflicts in the testimony and to weigh the evidence accordingly, but
it also enables the fact finder to draw reasonable inferences from basic to
ultimate facts.  Jackson, 443 U.S.
at 319; Clayton, 235 S.W.3d at 778. 
Indeed, the trier of fact is the sole judge of the weight and
credibility of the evidence, see Brown v. State, 270 S.W.3d 564, 568
(Tex.Crim.App. 2008), cert. denied, 129 S.Ct. 2075, 173 L.Ed.2d 1139
(2009), and therefore we, in performing our sufficiency review, may not re‑evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact finder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex.Crim.App. 1999), cert. denied, 529 U.S. 1131, 120
S.Ct. 2008, 146 L.Ed.2d 958 (2000). 
Instead, we determine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict. 
Hooper v. State, 214 S.W.3d 9, 16‑17 (Tex.Crim.App.
2007).  Moreover, we presume that the
fact finder resolved any conflicting inferences in favor of the verdict and
defer to that resolution.  Jackson,
443 U.S. at 326; Clayton, 235 S.W.3d at 778.

The indictment
charged Appellant with indecency with a child and alleged:

[O]n or about the 1st day of April,
A.D., 2007 and anterior to the presentment of this indictment, in the County
and State aforesaid, JOSE Z. ALVARADO, did then and there intentionally or
knowingly, engage in sexual contact with “C.J.”, a child younger than 17 years
of age, and not the spouse of JOSE Z. ALVARADO, by touching “C.J.’s” genitals
with his hand, with the intent to arouse or gratify the sexual desire of any
person, including his own sexual desire, Against the Peace and Dignity of the
State.

 

Thus, to prove Appellant committed attempted aggravated
sexual assault, the State was required to show that on or about April 1, 2007,
Appellant intentionally or knowingly touched C.J.’s genitals with his hand with
the intent to arouse or gratify his own sexual desire or that of another person
and that C.J. was under the age of 17 and was not Appellant’s spouse at the
time of the offense.  Tex. Penal Code Ann. § 21.11(a)(1),
(b)(1)(West 2011).

A person acts intentionally, or with intent
with respect to the nature of his conduct or to a result of his conduct when it
is his conscious objective or desire to engage in conduct or cause the
result.  Tex. Penal Code Ann. § 6.03(a)(West 2011).  Proof of a culpable mental state generally
relies upon circumstantial evidence.  Rodriguez v. State, 793 S.W.2d 744, 748
(Tex.App. – San Antonio 1990, no pet.). 
Circumstantial evidence of an accused’s mental state is not treated
differently than circumstantial evidence of other elements and is reviewed
under the same standard as direct evidence. 
Laster v. State, 275 S.W.3d
512, 521 (Tex.Crim.App. 2009).  Moreover,
intent can be inferred from an accused’s actions, words, and conduct.  Guevara
v. State, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004); Maldonado v. State, 998 S.W.2d 239, 243 (Tex.Crim.App. 1999); Gallegos v. State, 340 S.W.3d 797, 802 (Tex.App. – San Antonio 2011, no
pet.).  An accused’s intent is a question
of fact to be determined by the fact finder from all the facts and
circumstances in evidence.  Hemphill v. State, 505 S.W.2d 560, 562
(Tex.Crim.App. 1974).  The specific
intent required in proving indecency with a child may be inferred from a
defendant’s conduct, his remarks, and all of the surrounding
circumstances.  See McKenzie v. State, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981).  An oral expression of intent is not required
and the conduct itself is sufficient to infer intent.  C.F. v.
State, 897 S.W.2d 464, 472 (Tex.App. – El Paso 1995, no writ).

            In his
voluntary statement, Appellant admitted that he touched C.J.’s “private part”
but stuck his hand in her under the mistaken belief that he was touching his
wife and removed his hand when he heard C.J. speak.  At trial, Appellant admitted touching C.J.’s
buttocks, described the touching as a spanking, denied touching C.J.’s
genitals, and claimed the touching was accidental because he believed he was
contacting his wife.  Rather, Appellant
stated that it was not his intention to touch C.J. as he intended to spank his
wife as he did routinely.  Appellant
denied that he spanked C.J. to satisfy any sexual desire.

            C.J.
testified that when she awoke, she felt and saw Appellant’s hand touching her genitals
underneath the blue jeans and underwear that she had worn to bed and that
Appellant was located where her mother usually slept.  Ms. Aranda, the outcry witness, testified
that C.J. cried upon being interviewed, pointed to an anatomical drawing to
show that Appellant had touched her vagina, causing her pain, and disclosed
that Appellant had unbuttoned the pants she was wearing and touched her under
her underwear.

Having viewed this conflicting evidence in
the light most favorable to the verdict, we find  the trial court’s inference of intent from the
evidence is reasonable based upon the combined and cumulative force of all the
evidence, and we conclude that any rational trier of fact could have found the
essential element of intent beyond a reasonable doubt.  Hooper, 214 S.W.3d at 16‑17; Jackson,
443 U.S. at 326; Clayton, 235 S.W.3d at 778.  Issue Two is overruled.

CONCLUSION

The trial court’s judgment is affirmed.

 



January 18, 2012                                             GUADALUPE
RIVERA, Justice

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)











[1]
Appellant’s brief includes an affidavit that is not contained in either the
clerk’s record or the reporter’s record, the two components which comprise the
appellate record.  Tex. R. App. P. 34.1.  We may not consider factual assertions that
are outside the record, nor may a party circumvent this prohibition by
submitting an affidavit for the first time on appeal.  Whitehead
v. State, 130 S.W.3d 866, 872 (Tex.Crim.App. 2004).